AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

United States of America

v.

LIFE-WORK POTENTIAL LTD. and
JANE THURNELL READ,

Defendants

Case No.

**2 0 MJ 0 1 4 9 2**

**DENIED**
**BY ORDER OF**
**Honorable Alka Sagar**
UNITED STATES MAGISTRATE JUDGE

ON: _____ **April 3, 2020**

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the dates of March 16, 2020, and March 20, 2020, in the county of Los Angeles in the Central District of California, the defendants violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 331(a), 333(a)(1) | Introduction of Misbranded/Adulterated Medical Devices into Interstate Commerce |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Ryan T. Grams, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    April 2, 2020

City and state:   Los Angeles, California

_____
*Judge's signature*

Hon. Alka Sagar, U.S. Magistrate Judge
*Printed name and title*

ATTACHMENT TO COMPLAINT

Offense Description:

On or about March 16, 2020, and March 20, 2020, in Los Angeles County, within the Central District of California, defendants LIFE-WORK POTENTIAL LIMITED and JANE THURNELL-READ introduced and willfully caused the introduction of misbranded and adulterated devices into interstate commerce. The devices were misbranded and adulterated, in violation of the Food, Drug, and Cosmetic Act because, *inter alia*, the devices did not undergo the necessary premarket approval; no notification had been submitted to the United States Food and Drug Administration prior to marketing; the devices did not have adequate directions for use; and the devices were manufactured, prepared, propagated, compounded, or processed in an unregistered establishment.

## AFFIDAVIT

I, Ryan Grams, being duly sworn, declare and state as follows:

### I.  PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of a criminal complaint against LIFE-WORK POTENTIAL LIMITED ("LIFE-WORK POTENTIAL") and JANE THURNELL-READ ("THURNELL-READ"), as well as an arrest warrant against THURNELL-READ for violations of 21 U.S.C. §§ 331(a), 333(a)(1) (the introduction or delivery for introduction into interstate commerce of any device that is adulterated or misbranded).

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF AFFIANT

3.    I am a Special Agent ("SA") with the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have been employed by HSI since September of 2018.  In 2019, I completed the Criminal Investigation Training Program and the Homeland Security Investigation Special Agent Training Program

1

at the Federal Law Enforcement Training Center in Glynco, Georgia ("GA").

4.   As an SA with HSI, my primary responsibilities are to investigate violations of federal law involving fraud, importation and exportation crimes, cybercrimes, bulk cash smuggling, weapons smuggling, identity theft, human smuggling and trafficking, and the distribution and possession of controlled substances in violation of Title 21 of United States Code.   Throughout my career, I have participated in numerous warrants to seize evidence of violations of federal and state law, as well as apprehended individuals who have committed such violations.   In addition, I am familiar with HSI's criminal investigative techniques for performing criminal investigations involving importation and exportation crimes and smuggling.

5.   Prior to becoming a SA, I worked for ICE Enforcement and Removal Operations ("ERO") and the Bureau of Prisons ("BOP").   Prior to becoming a federal law enforcement officer, I was a Sergeant in the United States Marine Corps.   I received a Bachelor of Arts degree in Criminal Justice from Michigan State University in 2015.

### III. SUMMARY OF PROBABLE CAUSE

6.   On March 13, 2020, HSI Los Angeles International Airport ("LAX") received information from Customs and Border Protection ("CBP") at the International Mail Facility ("IMF") regarding several shipments of potential counterfeit COVID-19 test kits intercepted from Exminster, United Kingdom.   The packages were en route to various recipients in Southern

California and other locations within the United States. Further examination by CBP revealed several plastic bags containing small vials labeled, "Corona Virus 2019ncov (COVID-19)." According to the Customs Declaration on each package, the contents were described as "Purified Water Vials."

7.    The packages intercepted on March 13, 2020, were sent from a company called LIFE-WORK POTENTIAL, located in Exminster, United Kingdom. In the following days, at least another 80 packages were identified as being sent to the United States by LIFE-WORK POTENTIAL. The LIFE-WORK POTENTIAL website, located at http://lifeworkpotential.com, states that LIFE-WORK POTENTIAL is under the personal supervision of THURNELL-READ. During my interview of THURNELL-READ, she informed me that she is a majority owner of LIFE-WORK POTENTIAL.

8.    In the weeks following the initial interception of liquid vials labeled as COVID-19, interviews were conducted with various individuals who received what appeared to be the same items from LIFE-WORK POTENTIAL. Each individual stated that they had ordered the items from LIFE-WORK POTENTIAL, which is owned by THURNELL-READ. In addition, each package contained a receipt from LIFE-WORK POTENTIAL listing the company's address, telephone number, and email address.

IV. **REGULATORY BACKGROUND REGARDING ADULTERATED AND MISBRANDED MEDICAL DEVICES**

9.    The U.S. Food and Drug Administration ("FDA") is an agency of the United States Government charged with the responsibility of protecting the American public by enforcing

the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-399h, to ensure, among other things, that devices are safe, effective, and bear labeling containing true and accurate information.

10.   COVID-19 test kits are regulated by the FDA's Center for Devices and Radiological Health as in vitro diagnostic ("IVD") devices.  Presently, there are no cleared or approved COVID-19 test kits, but under the current public health emergency, the Secretary of HHS has authorized emergency use of IVD's for detection and/or diagnosis of the novel coronavirus (2019-nCoV).  During the emergency declaration, all COVID-19 IVD test kits that are granted Emergency Use Authorization are allowed to be distributed (and thus imported) in the United States without premarket clearance or approval.

11.   Neither LIFE-WORK POTENTIAL nor any of its "test kits" is included on the list of COVID-19 IVD test kits that have been granted Emergency Use Authorization, and thus cannot be distributed and imported into the United States without premarket clearance or approval.

12.   The FDCA establishes a process for FDA to evaluate medical devices and determine if they can be lawfully marketed in the United States.

13.   All devices are classified into one of three categories, Class I (lowest risk), II, or III (highest risk). 21 U.S.C. § 360c.  A device's class determines the type of regulatory controls to which it will be subject and what review process, if any, it will need to go through prior to marketing.

4

With the exception of certain devices that are exempt from premarket review, new devices are automatically classified into Class III by statute, and require full premarket approval before they can be marketed.  21 U.S.C. §§ 360c(f)(1) and 360e(a). Failure to obtain premarket approval results in a device being adulterated under 21 U.S.C. § 351(f)(1)(B).

14.  Certain devices that are lower risk are permitted to be cleared through the "510(k) clearance" process prior to marketing. 21 U.S.C. § 360(k); 21 C.F.R. Part 807.  A device for which no 510(k) notification was submitted to FDA prior to marketing is misbranded under 21 U.S.C. § 352(o).

15.  A device is further misbranded under 21 U.S.C. § 352 if its labelling lacks adequate directions for use (21 U.S.C. § 352(f)(1)); or if the device was manufactured, prepared, propagated, compounded, or processed in an unregistered establishment (21 U.S.C. § 352(o)).

16.  Under the FDCA, labeling can include packaging, product inserts, websites, graphics, and promotional materials. 21 U.S.C. § 321(m).

17.  Based on my research and discussion with individuals at the FDA, the vials at issue here are considered to be devices because they are intended to diagnose, mitigate, or prevent COVID-19 and therefore the vials fit within the definition of a device in section 210(h) of the FDCA.  See 21 U.S.C. § 321(h) (defining "device" as "an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part or

5

accessory, which is intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals.")  However, the vials have not obtained premarket approval, have not received "510(k) clearance," and, as further discussed below, did not have labelling with adequate directions for use.

18.  The FDCA prohibits certain acts involving FDA-regulated products.  See 21 U.S.C. § 331.  These include distributing or causing the distribution into interstate commerce of an adulterated or misbranded device, which is prohibited by 21 U.S.C. § 331(a).  A violation of section 331(a) is a strict liability misdemeanor unless it is committed with the intent to defraud or mislead.  21 U.S.C. § 333(a).

## V.  STATEMENT OF PROBABLE CAUSE

### A.  Background on the Inspection of Mail Parcels at the Border

19.  Based on my training and experience, and my conversation with other law enforcement officers, I have learned the following:

a.  CBP must examine and admit international mail parcels and shipments that arrive in the United States before they are delivered to their destination by a carrier, including the United States Postal Service (USPS).  This includes all foreign mail carriers such as the Royal Mail Group, based out of London, United Kingdom.  CBP officers conduct routine examinations of foreign mail service parcels at IMFs like the facility in Torrance, California, as the parcels enter the

United States, before the parcels are prepared for delivery to their final destination. Due to the large volume of cargo that enters the United States on a daily basis, CBP uses a variety of methods to select parcels for border search examination including random and targeted inspections.

b.    Pursuant to their authority under Title 19 of the Code of Federal Regulations, Section 162.6 (also known as "Border Search Authority"), CBP officers and certain other law enforcement officers may conduct examinations of goods entering the United States without a search warrant, probable cause, or individualized suspicion.

**B.    Discovery of Small Vials in Package #1 Addressed to D.S. in Palm Desert, California**

20.    On March 16, 2020, I was notified by CBP officers of a package intercepted in Torrance, California, from LIFE-WORK POTENTIAL in Exminster, United Kingdom. The package was addressed to an individual with the initials "D.S." in Palm Desert, California. Upon examination of the package, CBP officers discovered several plastic bags containing small vials labeled with the following: "Virus 1 Test Kit", "Virus 2 Test Kit", "Virus 3 Test Kit", "FUNGUS Etc. 2 Test Kit", "FUNGUS Etc. 3 Test Kit", and "Corona Virus 2019ncov (COVID-19)." In addition, CBP officers noticed that the vials contained a clear liquid of an unknown substance. According to the Customs Declaration for the package, the contents were described as "Purified Water Vials."

21.    The package addressed to D.S. contained: one vial labeled as "Corona Virus 2019ncov (COVID-19)"; approximately 130 vials labeled as various other test kits;  a receipt of purchase from LIFE-WORK POTENTIAL addressed to D.S., which listed the price for the COVID-19 vial as £4.77; and a piece of paper titled "Test Kits," that stated, "these vials contain sterilised water" and "do not contain the virus":

**TEST KITS**

These vials contain sterilised water. They are not medicines or drugs. Although they may have the name of a virus, a hormone or a vaccine (for example) on the test vial, they do not contain the virus, hormone or vaccine itself, but are simply testing vials for sensitivity to that virus, etc.

They do not need to be opened. They are completely safe and non-hazardous and are used as a non-invasive test of a person's area of weakness.

We export these vials to over 40 countries. They are used by recognised practitioners in the UK, Australia, Canada, France, Germany, Hong Kong, Poland, Russia, Switzerland, USA and many other countries.

**These vials have a binding tariff classification of
2201900000.
(BTI Reference: GB 123293295).**

22.   The vial labeled, "Corona Virus 2019ncov (COVID-19),"
was individually packaged in a plastic Ziploc bag:



23.   On March 17, 2020, I, along with SA Andrew Kim and FDA
SA Errol Watson, interviewed D.S. at her residence in Palm
Desert, California.  D.S. provided the following information,
among other things:

     a.   D.S.  claimed to be an independent kinesiologist
researcher with no formal training.  She stated that the vials
were to be used for her research and only used for her family,
emphasizing that she had no intention of giving them to anyone
else.  Furthermore, D.S. said that the vials would not be used
for diagnostic purposes, but would only test the human body's
reaction to a particular virus's energy.

     b.   D.S. stated that she had been ordering products
from LIFE-WORK POTENTIAL for approximately seven years, and that
THURNELL-READ was the owner of LIFE-WORK POTENTIAL.  D.S. also

said that THURNELL-READ was a well-known kinesiologist who D.S. had discovered through Google. All of D.S.'s purchases were done through the internet, and all of her correspondence with LIFE-WORK POTENTIAL was done through email. D.S. would not provide contact information for THURNELL-READ, but said that THURNELL-READ's contact information was listed on LIFE-WORK POTENTIAL's website.

        c.   SA Watson showed D.S. several photographs of the package that had been addressed to her from LIFE-WORK POTENTIAL, and D.S. verified that the information listed on the shipping label was hers. D.S. stated that THURNELL-READ would only sell to customers who "met her criteria" and that she would not sell products to the public. According to D.S., there are other companies who sell these products, but she has only ordered from LIFE-WORK POTENTIAL. D.S. also said that she had other vials from LIFE-WORK POTENTIAL in her home, but declined to show them to me or SAs Kim and Watson.

### C.   Discovery of Small Vials in Package #2 Addressed to B.S. in Gilbert, Arizona

24.   On March 16, 2020, I was notified by CBP officers of another package intercepted in Torrance, California, from LIFE-WORK POTENTIAL in Exminster, United Kingdom. The package was addressed to an individual with the initials "B.S." in Gilbert, Arizona. Upon examination of the package, CBP officers discovered several plastic bags containing small vials labeled with the following: "Nutrition 1 Test Kit"; "Nutrition 2 Test Kit"; and "Corona Virus 2019ncov (COVID-19)." In addition, CBP

officers noticed that the vials contained a clear liquid of an unknown substance. According to the Customs Declaration for the package, the contents were described as "Purified Water Vials."

25.    The package addressed to B.S. contained: one vial labeled, "Corona Virus 2019ncov (COVID-19)"; approximately 46 vials labeled as various other test kits; a receipt of purchase from LIFE-WORK POTENTIAL addressed to B.S., which listed the price for the COVID-19 vial as £4.77; and the same piece of paper titled "Test Kits," which was contained in the package addressed to D.S.

26.    On March 17, 2020, HSI Phoenix SAs Rhonda Williams, Jonathan Abend, and Tina Snelgrove interviewed B.S., who provided the following information, among other things:

a.    B.S. stated that he has been a chiropractor for four years, and that he intended to use the COVID-19 vial on his patients. B.S. said he would never use the vial to diagnose a patient, and would refer a symptomatic patient to a medical doctor.

b.    B.S. stated that he had received an unsolicited email from LIFE-WORK POTENTIAL saying that many customers had requested a COVID-19 vial, and that LIFE-WORK POTENTIAL had vials in production. B.S. then ordered a vial from LIFE-WORK POTENTIAL when it became available.

c.    B.S. stated that he had been ordering similar items from LIFE-WORK POTENTIAL for approximately four years, and showed the HSI SAs similar vials that he had received from LIFE-WORK POTENTIAL in the past.

**D.   Discovery of Small Vials in Package #3 Addressed to J.C. in Broomfield, Colorado**

27.   On March 16, 2020, I was notified by CBP officers of a package intercepted in Torrance, California, from LIFE-WORK POTENTIAL in Exminster, United Kingdom.  The package was addressed to an individual with the initials "J.C." in Broomfield, Colorado.  Upon examination of the package, CBP officers discovered several plastic bags containing small vials labeled, "Corona Virus 2019ncov (COVID-19)."  In addition, CBP officers noticed that the vials contained a clear liquid of an unknown substance.  According to the Customs Declaration for the package, the contents were described as "Purified Water Vials."

28.   The package addressed to J.C. contained: nine vials labeled, "Corona Virus 2019ncov (COVID-19)"; a receipt of purchase from LIFE-WORK POTENTIAL addressed to J.C., which listed the price for each COVID-19 vial as £4.77; and the same piece of paper titled "Test Kits," which was contained in the other packages sent from LIFE-WORK POTENTIAL, as discussed above.

29.   On March 24, 2020, HSI Denver SA Greg Wertsch and FDA SA Jason Cassidy telephonically interviewed J.C., who provided the following information, among other things:

a.   J.C. stated that a friend of hers had told her about LIFE-WORK POTENTIAL, and that the first and only purchase she made from LIFE-WORK POTENTIAL was an order for nine vials from the company's website.  J.C. said she believed the vials had water with healing powers and would help to heal her family.

b.    J.C. works as a nurse in the urgent care
department at Boulder Community Hospital and believes in total
body medication.  She learned about how to use the items from
LIFE-WORK POTENTIAL by watching a YouTube video.  J.C. hoped the
vials would help in preventing COVID-19 by testing a person's
reaction to the vial, comparing it to a test for allergies.
However, she said that the vials would never diagnose anything
and didn't know why the vials were labeled as test kits.  J.C.
stated that the vials were for her family and not to be used in
her employment.

**E.    Discovery of Small Vials in Package #4 Addressed to S.G. in Centennial, Colorado**

30.    On March 16, 2020, I was notified by CBP officers of a
package which was intercepted in Torrance, California, from
LIFE-WORK POTENTIAL in Exminster, United Kingdom.  The package
was addressed to an individual with the initials "S.G." in
Centennial, Colorado.  Upon examination of the package, CBP
officers discovered several plastic bags containing small vials
labeled, "Corona Virus 2019ncov (COVID-19)."  In addition, CBP
officers noticed that the vials contained a clear liquid of an
unknown substance.  According to the Customs Declaration for the
package, the contents were described as "Purified Water Vials."

31.    The package addressed to S.G. contained: one vial
labeled, "Corona Virus 2019ncov (COVID-19)"; 32 vials labeled,
"Common Elements (Metals & Minerals) Test Kit"; a receipt of
purchase from LIFE-WORK POTENTIAL addressed to S.G.; and the
same piece of paper titled "Test Kits," which was contained in

the other packages sent from LIFE-WORK POTENTIAL, as discussed above.

32.  On March 24, 2020, HSI Denver SA Greg Wertsch telephonically interviewed S.G., who provided the following information, among other things:

a.  S.G. stated that she had heard about LIFE-WORK POTENTIAL from others, and had ordered products from the business before.  According to S.G., the vials test people for sensitivity to various things so she can help them from a therapeutic standpoint.  S.G. said she ordered the vials from LIFE-WORK POTENTIAL's website and received confirmation through email.

b.  S.G. works as a chiropractor and operates independently from a business out of her home.  She said that she learned the technique for administering the test on her own, and that it wasn't a diagnosis; rather, the energy from the vials would only test for sensitivity to a virus.  S.G. said that the vials did not come with any instructions, but that she was already trained to use them.  S.G. said that she ordered the vials from a woman who was the owner of LIFE-WORK POTENTIAL, who would create "these things" with a 3D printer.  Furthermore, Geersen stated that this technique is not a medical test, but a kinesiology technique.

**F.  Discovery of Small Vials in Package #5 Addressed to R.M. in Pacific Palisades, California**

33.  On March 16, 2020, I was notified by CBP officers of a package intercepted in Torrance, California, from LIFE-WORK

14

POTENTIAL in Exminster, United Kingdom.  The package was
addressed to an individual with the initials "R.M." in Pacific
Palisades, California.  Upon examination of the package, CBP
officers discovered several plastic bags containing small vials
labeled, "Corona Virus 2019ncov (COVID-19)."  In addition, CBP
officers noticed that the vials contained a clear liquid of an
unknown substance. According to the Customs Declaration for the
package, the contents were described as "Purified Water Vials."

34.  The package addressed to R.M. contained: one vial
labeled, "Corona Virus 2019ncov (COVID-19)"; two vials labeled
as other test kits; a receipt of purchase from LIFE-WORK
POTENTIAL addressed to R.M., which listed the price for the
COVID-19 vial as £4.77; and the same piece of paper titled "Test
Kits," which was contained in the other packages sent from LIFE-
WORK POTENTIAL, as discussed above.

35.  On March 27, 2020, HSI LAX SA Victoria Scott, SA
Lindsay Sandoval, and FDA SA Errol Watson interviewed R.M. at
her residence in Pacific Palisades, California.  R.M. provided
the following information, among other things:

a.   R.M. stated that she had been ordering
homeopathic vials for approximately 10 years, but that this was
her first purchase from LIFE-WORK POTENTIAL.  R.M. explained
that the vials were purchased from LIFE-WORK POTENTIAL's
website, and she received a confirmation email from the company
shortly thereafter.  She stated that she did not know the owner
of LIFE-WORK POTENTIAL personally, but had received an email

from LIFE-WORK POTENTIAL informing her that the company was under investigation and would no longer be selling any products.

**G.   Discovery of Small Vials in Package #6 Addressed to N.S. in Los Angeles, CA**

36.   On March 16, 2020, I was notified by CBP officers of a package which was intercepted in Torrance, California, from LIFE-WORK POTENTIAL in Exminster, United Kingdom. The package was addressed to an individual with the initials "N.S." in Los Angeles, California.  Upon examination of the package, CBP officers discovered several plastic bags containing small vials labeled, "Corona Virus 2019ncov (COVID-19)," and various other virus names. In addition, CBP officers noticed that the vials contained a clear liquid of an unknown substance.  According to the Customs Declaration for the package, the contents were described as "Purified Water Vials."

37.   The package addressed to N.S. contained: two vials labeled, "Corona Virus 2019ncov (COVID-19)"; five vials labeled as various other test kits; a receipt of purchase from LIFE-WORK POTENTIAL addressed to N.S.; and the same piece of paper titled "Test Kits," which was contained in the other packages sent from LIFE-WORK POTENTIAL, as discussed above.

38.   On March 27, 2020, HSI LAX SA Lindsay Sandoval and FDA SA Errol Watson telephonically interviewed N.S., who provided the following information, among other things:

a.   N.S. stated that he is the owner of a chiropractor practice in Los Angeles.  N.S. said that LIFE-WORK POTENTIAL is owned by a lady in England, and that he previously

16

ordered from LIFE-WORK POTENTIAL's website approximately one year ago.

b.   N.S. said he purchased the test kit for homeopathic purposes and stated that he ordered it for the sake of having it.  He further stated that he did not entirely understand his purchase, and initially said that he expected to receive either a vial of water or a sample of the virus.  N.S. then quickly recanted his statement and said that it was not a sample at all.  N.S. also said that the package did not come with any instructions from the vendor.

c.   N.S. told the interviewing agents that he wanted to be prepared for the worst, but that he has never used the vials and has never diagnosed anyone with the vials. Additionally, N.S. stated that he has not sold the vials to the public and has never opened the vials.

## H.   Discovery of Small Vials in Package #7 Addressed to J.T. in Thomasville, Georgia

39.   On March 20, 2020, I was notified by CBP officers of a package intercepted in Queens, New York, from LIFE-WORK POTENTIAL in Exminster, United Kingdom.  The package was addressed to an individual with the initials "J.T." in Thomasville, Georgia.  Upon examination of the package, CBP officers discovered several plastic bags containing small vials labeled, "Corona Virus 2019ncov (COVID-19)," and various other viruses.  In addition, CBP officers noticed that the vials contained a clear liquid of an unknown substance.  According to

the Customs Declaration for the package, the contents were
described as "Purified Water Vials."

40.   The package addressed to J.T. contained: 28 vials,
several of which were labeled as "Corona Virus 2019ncov (COVID-
19)," and various other test kits; a receipt of purchase from
LIFE-WORK POTENTIAL addressed to J.T., which listed the price
for each of the COVID-19 vials as £4.77; and the same piece of
paper titled "Test Kits," which was contained in the other
packages sent from LIFE-WORK POTENTIAL, as discussed above.

41.   On March 26, 2020, HSI Atlanta SA Thomas Harris
telephonically interviewed J.T., who provided the following
information, among other things:

a.   J.T. stated that she follows a doctor who works
in "natural immunity," and attended a conference in Atlanta last
fall where she learned more about natural immunity.  After
attending the conference, J.T. received an email from LIFE-WORK
POTENTIAL, stating that they sold homeopathic vials with what
she referred to as "liquid signatures."  J.T. said that she had
never ordered from LIFE-WORK POTENTIAL before.

b.   J.T. has been a registered nurse for ten years
and has an herbal life business to assist people who are
struggling with health issues.  J.T. intended to use the vials
for their liquid signatures in order to test for a deficiency to
certain vitamins; she said that she would never diagnose or
treat anyone with the vials, but that she planned on using the
vials on her patients in order to assist them in feeling better
during the current pandemic.  J.T. believed the test kit she

ordered would contain 22 to 23 vials, but that it was never intended to be used as a COVID-19 test kit.

I.    **Interview of THURNELL-READ**

42.    On March 31, 2020, I, along with SA Andrew Kim, spoke with THURNELL-READ telephonically.  THURNELL-READ provided the following information, among other things:

a.    THURNELL-READ stated that LIFE-WORK POTENTIAL opened in 2008 and is owned by 3 major shareholders, with THURNELL-READ being the majority holder.  She further explained that she had been selling test kits to the United States since the early 1990s.  THURNELL-READ estimated that LIFE-WORK POTENTIAL sold between 200 to 300 orders of COVID-19 vials to customers in the United States.

b.    THURNELL-READ stated that the vials are not sold to the public, and are only sold to practitioners.  The vials are described as containing water, and the labels associated with each individual vial represent the "energy" of that particular virus.  THURNELL-READ further stated that the vials are not intended to be ingested, but used instead in a method similar to acupuncture.  According to THURNELL-READ, the individual administering the test taps the vial against acupuncture points on the body.  By using this method, the vials can help build one's "spiritual energetic resistance" to the COVID-19 virus.

c.    THURNELL-READ explained to me that her process for verifying that a customer is a practitioner occurs during the checkout process on LIFE-WORK POTENTIAL's website.  When a

customer is ready to checkout, a pop-up will occur which notifies that customer that the products are not for public use. However, any customer can continue purchasing the products past this screen, and no additional verification methods are used. THURNELL-READ stated that United Kingdom's authorities suggested that she add additional screening methods to verify customers prior to selling the products, to which she agreed.

      d.    Furthermore, THURNELL-READ acknowledged that the products do not ship with instructions on how to use the vials.

## VI. CONCLUSION

43.  For all of the reasons described above, there is probable cause to believe that LIFE-WORK POTENTIAL and THURNELL-READ have committed a violation of 21 U.S.C. § 331(a), 333(a)(1) (the introduction or delivery for introduction into interstate commerce of any device that is adulterated or misbranded).

 

Ryan Grams, Special Agent
Homeland Security
Investigations

Subscribed to and sworn before me
this _____ day of April, 2020.

UNITED STATES MAGISTRATE JUDGE